**Walter H. BROWN, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 18, 1974.

Decided Nov. 20, 1974.

Paul M. Lukoff and Joseph B. Green, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Jeffrey M. Weiner and Joseph A. Hurley, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY, Associate Justice, and McNEILLY, J.

HERRMANN, Chief Justice:

The defendant was convicted of rape, robbery, and possession of a deadly weapon

during the commission of those felonies. He appeals upon two grounds: (1) that the admission of certain hair-identification testimony was reversible error; and (2) that the Trial Court erred in allowing in-court identification of the defendant by the victim and by another.

### I.

At trial, an F.B.I. agent testified as an expert witness that a hair specimen found on the clothing of the victim "exhibited the same microscopic characteristics" as head hairs removed from the defendant. The defendant contends that this testimony should have been excluded as "speculative or conjectural" because the witness was unable to state specifically that the hair found on the victim's clothing was that of defendant.

The hair-identification testimony was properly admitted. The weight to be given such evidence is for the trier of fact. See Robinson v. State, 18 Md.App. 678, 308 A.2d 734 (1973). Compare Henry v. State, Del.Supr., 298 A.2d 327 (1972).

### II.

The defendant contends that his in-court identification by the victim was fatally tainted by pre-trial confrontations (both photographic and corporeal) so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate his due process rights.

There were six pre-trial confrontations between the victim and the defendant or his photograph. The defendant contends that the victim was so "inundated" by the pre-trial identification procedures as to make her in-court identification of him inevitable;* that the in-court identification of the defendant by the victim was entirely

predicated upon the six impermissibly suggestive pre-trial confrontations.

Voir dire examination of the victim revealed the following facts concerning the six out-of-court confrontations:

1. About fifteen minutes after the victim reported the rape to the police, a suspect was brought to the scene and placed across the street from her third-story apartment. He stood in a group of ten or twelve uniformed policemen. The victim identified the suspect as the man who had assaulted her. She made this initial identification on the basis of the suspect's dress, his race, and his general stature.

2. A few hours later, at the police station, the victim looked through a one-way window at three people. She recognized two of the individuals as police officers whom she had met earlier. She identified the third person as her assailant.

3. Immediately following the window viewing, and at the suggestion of a police officer, the victim observed the individual she had identified through the window as he was escorted past the room in which she was sitting. She again identified him as her assailant.

4. Six days later, the victim returned to the police station to look at a group of pictures. The scheduled photographic line-up was not conducted. However, without being instructed by the police to do so, she turned over a single picture that had been left face down on the counter in front of her. She recognized it as a picture of her assailant. The victim did not inform anyone that she had seen this picture until the morning of the trial.

5. The fifth time that the victim had the occasion to see the accused was just prior to the preliminary hearing. The de-

---

* Evidence of the out-of-court identifications was introduced at trial by the defendant and not by the State. Consequently, we are concerned here only with the admissibility of the in-court identification and not with the special problems which arise from presenta-tion by the State of evidence of the out-of-court identifications. Compare Reed v. State, Del.Supr., 281 A.2d 142 (1971), with Redden v. State, Del.Supr., 269 A.2d 227 (1970). See Jenkins v. State, Del.Supr., 281 A.2d 148, n. 1 (1970).

fendant was not pointed out to her. She observed him among a group of some thirty persons in the lobby of the Court House.

6. Finally, on the morning of the trial, the victim viewed photographs of six black men and identified the photograph of the defendant as a picture of the man who had raped her. The photograph she selected was the only one of the six which had a height chart in the background.

Relying on Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the defendant asserts that the pre-trial confrontations and identifications were so impermissibly suggestive as to constitute denial of due process.

■ An unnecessarily suggestive out-of-court confrontation makes an in-court identification inadmissible unless it is determined on voir dire examination that the in-court identification has an "independent origin". United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); see Jenkins v. State, Del.Supr., 281 A.2d 148 (1971).

Following the voir dire examination of the victim in this case, the Trial Judge ruled:

> " * * * that any in-court identification that this victim might make of the defendant has not been tainted in any way by any of the alleged impermissive identifications made by this victim during the period when she was either at the police station, in the Public Building or at the preliminary hearing. * * * [T]he Court believes that the victim made a sufficient mental image of her assailant in her mind during that half an hour period in that apartment. That any other showing of photographs or of the defendant in person did not taint that identification."

This ruling is the basis of defendant's appeal.

■ We cannot say, on the record before us, that the Trial Court erred in ruling that the victim's in-court identification of the defendant was based on observations made at the time she was assaulted and was not tainted by the pre-trial confrontations. The victim testified that, during the assault, she spent at least half an hour with the defendant in natural and artificial light adequate to enable her to see him clearly. He wore no mask and the victim faced him on numerous occasions. She testified that she was able to make out his facial features "all too clearly". Her description of the defendant prior to the confrontations was accurate and she at no time identified any other person as her attacker. The victim evidenced no doubt that the defendant was the man who raped her; her testimony on voir dire and in court was positive and unequivocal. There was no unreasonable delay between the time of the crime and the initial confrontations.

The showing of a single photograph of a suspect and a "one-on-one" personal confrontation for purposes of identification have been widely condemned as improper police practice. Stovall v. Denno, *supra;* Simmons v. United States, *supra;* Redden v. State, *supra.* We take this occasion to reemphasize that condemnation. However, whether such confrontations violate due process depends on the "totality of the surrounding circumstances". Stovall v. Denno, *supra;* Simmons v. United States, *supra;* Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Redden v. State, *supra.*

The due process question, then, is whether in the light of the totality of the surrounding circumstances, the photographic confrontations were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", Simmons v. United States, 390 U.S. at 384, 88 S.Ct. at 971; and whether in the same light the "one-on-one" confrontations were "so unnecessarily suggestive and conducive to irreparable mistaken

identification" as to violate due process. Stovall v. Denno, 388 U.S. at 302, 87 S.Ct. at 1972. See also Reed v. State, *supra;* Redden v. State, *supra.*

The recent case of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) provides "some general guidelines * * * as to the relationship between suggestiveness and misidentification."

"It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' Simmons v. United States, [supra], 390 U.S. at 384, 88 S.Ct. at 971. * * * It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the bases of the exclusion of evidence in Foster [Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)]." 409 U.S. at 198, 93 S.Ct. at 381.

The Court then set out certain factors to be considered in evaluating the likelihood of misidentification:

"* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (409 U.S. at 199, 93 S.Ct. at 382)

Thus, the answer to the question of whether an accused has been denied due process by suggestive pre-trial identification procedures depends on whether in light of the totality of circumstances surrounding the case there is a substantial likelihood of misidentification.

We conclude that in the light of the totality of the circumstances the pre-trial identification procedures adopted in this case, while seriously questionable, were not such as to deprive defendant of due process. Even if we were to decide that one or more of the six pre-trial confrontations were unnecessarily suggestive, decisions we need not make under the circumstances of this case, there is little likelihood that the procedures followed by the State led to misidentification of the defendant by the victim. She had him in unobstructed view in adequate light at close range for almost half an hour. We are satisfied that the Trial Judge was warranted in finding "independent origins" for the in-court identification.

## III.

■ The defendant contends that his in-court identification by another was also fatally tainted by impermissibly suggestive pre-trial confrontations.

Voir dire examination of this witness revealed that his initial confrontation with the defendant occurred near the scene of the crime, ten minutes after he had observed the defendant running toward him, and while defendant was in police custody.

This witness had an unobstructed view of the defendant for ten seconds in daylight from a distance of fifteen feet. He saw the defendant's face clearly. The witness had no doubt that the defendant was the man who ran past him, stopped, and looked in his direction. The witness later viewed photographs of the defendant and saw him at the preliminary hearing. In the light of all the circumstances, there is not "a very substantial likelihood of irreparable misidentification" of this defendant by this witness. Simmons v. United States, 390 U.S. at 384, 88 S.Ct. at 971. Accordingly, we find no error in this aspect of the case.

Affirmed.