IRVING TRUST COMPANY, Respondent, *v.* JOSEPH LEFF, Appellant.

(Submitted March 19, 1930; decided May 6, 1930.)

A. S. Cutler for appellant. The plaintiff's duty was to pay only upon authorization of the defendant depositor and the plaintiff's obligation was to make inquiry. (*Critten* v. *Chem. Nat. Bank*, 171 N. Y. 219; *Crawford* v. *West Side Bank*, 100 N. Y. 50; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *First Nat. Bank* v. *National Bway. Bank*, 156 N. Y. 459; *Susquehanna Line, Inc.*, v. *Auditore*, 223 App. Div. 585; *Baruch* v. *Buckley*, 167 App. Div. 113; *Farjeon* v. *Fulton Securities Co.*, 225 App. Div. 541; *Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225.) The plaintiff cannot claim to be an innocent holder for value. The relation between the parties was that of debtor and creditor. (*Critten* v. *Chem. Nat. Bank*, 171 N. Y. 219; Neg. Inst. Law, §§ 20, 91; *Old Colony Trust Co.* v. *Stumpel*, 126 Misc. Rep. 375; 247 N. Y. 538; *Tisdale Lumber Co.* v. *Piquet*, 153 App. Div. 266; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Davis Sewing Machine Co.* v. *Best*, 105 N. Y. 59; *Carnright* v. *Gray*, 57 Hun, 518; 127 N. Y. 92; *Seocord* v. *Burling*, 5 Den. 443.)

William A. Onderdonk and Paul E. Mead for respondent. The defendant's counterclaim is insufficient in law. (*Clarke* v. *Dillon*, 97 N. Y. 370; *Busch* v. *Interborough R. T. Co.*, 187 N. Y. 388; *Rich* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 382.) The Appellate Division properly reversed the order of Special Term denying plaintiff's motion for summary judgment. (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225; *Trust Co.* v. *Conklin*, 65 Misc. Rep. 1; *Little Falls Dairy Co.* v *Berghorn*, 130 Misc. Rep. 454.)

POUND, J. The Appellate Division, reversing the Special Term, granted plaintiff's motion to strike out the counterclaim set up in the answer and for summary judgment on the pleadings. The only question presented on this appeal is as to the sufficiency in law of the defendant's counterclaim.

The complaint states a cause of action for a balance of $4,933, with interest thereon from March 18, 1929, due on a promissory note made by defendant for $10,000 payable to himself and indorsed to plaintiff.

The answer denies that no part of the note has been paid except $5,067, but it appears that the amount due on the note is correctly set forth in the complaint. It further alleges by way of counterclaim that at all the times thereinafter mentioned defendant was a depositor in the plaintiff's bank and had a checking account with it; that on or about March 10, 1928, the defendant delivered to one Bragin a so-called check in the sum of $1,000, drawn on plaintiff and having on its face the following words: " Void unless and until title to premises 502–14 Liberty Street, Camden, New Jersey is taken by Joe Leff " (the defendant); that on or about March 16, 1928, Bragin surrendered this check to defendant's attorney and received in exchange therefor defendant's unconditional check for $1,000, drawn on plaintiff's bank, which check was paid to Bragin by plaintiff; that Bragin stole the surrendered conditional check from the possession of defendant's attorney and the plaintiff thereafter cashed the same without making any inquiry of the defendant as to whether the conditions on the face of the check had been met; wherefore defendant demands judgment for $1,000 against plaintiff. The counterclaim arises out of an alleged breach of contract between the bank and its depositor to pay on the depositor's account only upon the actual direction of the depositor. " The relation existing between a bank and a depositor being that of debtor and creditor, the bank can justify a payment on

the depositor's account only upon the actual direction of the depositor." (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 224.)

Affidavits were read in support of the motion for summary judgment and in opposition thereto. The plaintiff bank was not shown to be chargeable with actual knowledge of the transaction between defendant and Bragin. The defendant proceeded on the theory that the bank should not have paid the check to Bragin without inquiring of him as to whether title to premises 502–14 Liberty street had been taken by defendant and that if such inquiry had been made, although the bank would have learned that title had been taken it would also have learned that the check had been surrendered by Bragin to defendant and was no longer a valid obligation of the defendant.

A check, strictly speaking, is a negotiable instrument, *i. e.*, a bill of exchange drawn on a bank payable on demand (Neg. Inst. Law [Cons. Laws, ch. 38] § 321, § 2), and it is a misnomer to speak of a non-negotiable check. This order on the bank was a non-negotiable instrument which we will for convenience continue to refer to as a check. It did not " contain an unconditional promise or order to pay." (Neg. Inst. Law, § 20, subd. 2.) The bank, of course, took the chance in paying that the condition expressed on its face had been performed. It might have obtained this knowledge from Bragin or from any other available source. No duty rests on a bank to call up its depositor when a genuine check comes in to inquire whether it should be paid. The defendant's signature was genuine. The instrument was complete in form. The condition precedent to payment had been fulfilled. On defendant's theory of a breach of duty of inquiry as to the fulfillment of this condition, he cannot prevail if the check was a valid instrument as between the maker and the bank.

On the pleadings, however, the further question arises as to whether the check when presented to the bank for

payment was a valid instrument as between the maker and the bank. Although this question is not argued, it is considered in the opinion of the court below which disposed of it under the rule applicable to negotiable instruments.

To sustain plaintiff's recovery herein, the non-negotiable check must have had a valid inception. A check has no valid inception until delivery. (*Cowing* v. *Altman*, 71 N. Y. 435, 441.) Delivery means transfer of possession actual or constructive, from one person to another. (Neg. Inst. Law, § 2.) Delivery is sometimes presumed, conclusively or subject to rebuttal, for the protection of negotiable paper. Negotiable Instruments Law (§ 35) provides: " Where the [negotiable] instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

But this provision is peculiar to negotiable instruments. In the case of non-negotiable instruments, the thief has no title and can give none. He cannot obligate a party or support a right. (Cf. *Sabine* v. *Paine*, 223 N. Y. 401.) Defendant may establish that when the check was surrendered to him in exchange for his unconditional check, it ceased to be a legal order to pay money, conditional or otherwise; and that it was a nullity when it was presented to the bank for payment.

"Act and intention are the essential constituents of a delivery which makes the instrument operative according to its terms." (*Grannis* v. *Stevens*, 216 N. Y. 583, 587.) The question is, did the defendant do such an act in reference to the check as evidenced the intention to give it effect and operation? Had he authorized the bank to pay the check? A valid and intentional delivery must

appear. Possession and production of a non-negotiable instrument are not enough as against the allegation that no valid delivery had been made. To steal means to take away from one in lawful possession without right with the intention to keep wrongfully. An allegation of theft puts in issue the delivery of the check. In cases where the law does not protect holders in due course, inquiry by the bank of the maker is a necessary precaution for protection against imposition by a thief.

The counterclaim states a cause of action which is not put in issue by the pleadings and which, in the absence of a reply, stands admitted. No question of defendant's negligence is presented by the record.

Under the practice permitting a partial judgment, the court should have granted plaintiff's judgment for $3,933, and interest thereon from March 18, 1929, being so much of plaintiff's claim as defendant's counterclaim does not seek to reduce; severed the action on the counterclaim from the cause of action set forth in the complaint and denied the motion to strike out the counterclaim. (Civil Practice Act, § 476; Civil Practice Rules, rule 114.)

The judgment should be reversed with costs in this court and in the Appellate Division; the motion for summary judgment for plaintiff granted for $3,933, with interest from March 18, 1929; the order of Special Term so far as it denies the motion to strike out counterclaim affirmed and plaintiff given twenty days to serve a reply.

CARDOZO, Ch. J., CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur; LEHMAN, J., not voting.

Judgment accordingly.