Luther L. AUSTIN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22044.

United States Court of Appeals District of Columbia Circuit.

Argued April 30, 1969.

Decided May 27, 1969.

As Amended July 31, 1969.

Mr. Patrick H. Corcoran, Washington, D. C. (appointed by this court), for appellant.

Mr. Gregory C. Brady, Asst. U. S. Atty., of the bar of the Supreme Court of Nebraska, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty. at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty. at the time the brief was filed, and Roger E. Zuckerman, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

Appellant was found guilty by a jury of assault with a dangerous weapon and of robbery. He raises two points as error: (1) the giving of an instruction that flight by an accused can be used to infer guilt, and (2) the failure of the indictment (on the robbery count) to allege that appellant acted with specific intent. We hold that the flight instruction was erroneous, but it was not plain error under Rule 52(b), FED.R.CRIM.P.

Since we find that the indictment was not deficient, we affirm the conviction.

## I

The facts on which the court based the instruction on flight were these: A Mrs. Thompson had been robbed at work. The following day she was with a policeman, the two being parked in the officer's car at a gas station. (The officer was dressed only partly in his police uniform; the car was apparently his personal car.) While they were getting gas Mrs. Thompson spotted appellant on the street and pointed him out to the officer as the robber. The officer got out of the car and followed appellant. Appellant testified that he observed the two in the car, and saw the officer get out, but did not believe the officer was following him. The officer testified that after he got out of the car appellant walked away at a rapid pace; the officer had to run to catch up to him, being aided by passersby who pointed out the direction appellant took. Eventually the officer arrested appellant in his apartment.

The judge charged the jury, using the language of the standard charge on flight written by the Junior Bar Section of the Bar Association of the District of Columbia,[1] that:

"One factor you may take into account is whether or not you find that there has been flight or concealment by the Defendant after a crime has been committed. This does not create a presumption of guilt. You may consider evidence of flight or concealment, however, as tending to prove the Defendant's consciousness of guilt. You are not required to do so. You should consider and weigh evidence of flight or concealment by the Defendant in connection with all the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive."

1. Bar Ass'n of D.C., Criminal Jury Instructions for the District of Columbia 15 (Charge No. 27) (1966).

Although in argument both parties seem to have accepted the proposition that it is "well settled" in this jurisdiction that evidence of flight can be used to infer guilt, in fact the weakness of such an inference has long been pointed out. As early as 1896, in Alberty v. United States, 162 U.S. 499, 511, 16 S. Ct. 864, 868, 40 L.Ed. 1051, the Supreme Court noted:

"* * * [I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' Innocent men sometimes hesitate to confront a jury—not necessarily because they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves. * * *"

In 1954, in Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41, Judge Prettyman for this court pointed out that acts supposedly showing consciousness of guilt can be

"explained by terrorized innocence as well as by a sense of guilt. After all, innocent people caught in a web of circumstances frequently become terror-stricken."

The Supreme Court, in Wong Sun v. United States, 371 U.S. 471, 483 n.10, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963), reiterated that "we have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime," and the Court cited approvingly the language of Judge Prettyman in *Cooper* quoted above.

Shortly after *Wong Sun* this court again dealt with the problem. In Miller v. United States, 116 U.S.App.D.C. 45, 320 F.2d 767 (1963) (opinion of Chief Judge Bazelon), numerous psychological authorities were collected to demonstrate that when we deal with a person's flight from the scene of, or an accusation of, crime, we deal with an extraordinarily complex action, potentially prompted by a variety of motives other than guilt of the actual crime. Judge Bazelon concluded:

"When evidence of flight has been introduced into a case, in my opinion the trial court should, if requested, explain to the jury, in appropriate language, that flight does not necessarily reflect feelings of guilt, and that feelings of guilt, which are present in many innocent people, do not necessarily reflect actual guilt. This explanation may help the jury to understand and follow the instruction which should then be given, that they are not to presume guilt from flight; that they may, but need not, consider flight as one circumstance tending to show feelings of guilt; and that they may, but need not, consider feelings of guilt as evidence tending to show actual guilt."

116 U.S.App.D.C. at 51, 320 F.2d at 773. (Footnote omitted.)

██ It should be clear that *Wong Sun* and *Miller* have pointed inescapably to the fact that flight instructions should be used sparsely, and when used should be accompanied by a fuller explanation by the judge of the variety of motives which might prompt flight, and thus of the caution which a jury should use before making the inference of guilt from the fact of flight. It is apparent that the instruction in this case (and the D. C. Bar Association instruction which served as its basis[2]) fell short of such a full explanation. We hold that

2. It is ironic that the D. C. Bar Association instruction cites, as one of its supporting authorities, the *Miller* opinion.

an inadequate charge such as the present one is erroneous.[3] However, we hold further that the error was harmless in the absence of objection by defense counsel. Rules 30 and 52, FED.R.CRIM.P.

## II

Appellant's indictment on the robbery count read as follows:

"On or about December 15, 1966, within the District of Columbia, Luther L. Austin * * *, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Eva T. Thompson property * * * [specific items listed]."

Appellant argues that the indictment is deficient because it fails to state that Austin acted with specific intent.

In Jackson v. United States, 121 U.S. App.D.C. 160, 162, 348 F.2d 772, 774 (1965), we said, regarding a similar indictment:

"* * * While we do not hold that the indictment would in itself require reversal, we note that it leaves much to be desired both in completeness and in clarity. The element of specific intent should be clearly stated. * * *"

However, in *Jackson* the indictment was unclear because it quoted verbatim the entire robbery statute (thus making conjunctives out of the disjunctive modes of robbing—"by force and violence and against resistance, and by sudden and stealthy seizure and snatching, and by putting in fear," 121 U.S.App.D.C. at 161 n.2, 348 F.2d at 773 n.2); also, the judge's charge on intent incorrectly stated the law.

Here, the indictment did not suffer from the same defects, and the judge charged the jury explicitly that "[a]t the time of taking and carrying away the property the Defendant must have had the specific intent to deprive the complainant of his property and to convert and appropriate it to the use of the taker." We think that in these circumstances the words of the indictment, "stole and took from the * * * immediate actual possession," sufficiently apprised appellant of the nature of the crime and the intent which is a predicate for that crime.[4] Though we adhere to our statement in *Jackson, supra*, that it would be preferable for the indictment to spell out the requisite intent specifically, we do not find cause for reversal.

Affirmed.

Senior Circuit Judge WILBUR K. MILLER concurs in the result.

---

3. In line with *Wong Sun's* skepticism of such charges, and the concomitant responsibility to use flight charges sparingly, we have doubts whether, on these facts, an instruction was appropriate at all. However, as noted in text, in the absence of an objection the error was harmless.

4. We note that in Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the Supreme Court stated that stealing "means to *take away from one* in lawful possession without right with the *intention to keep wrongfully*." (Original italics; quoting from Irving Trust Co. v. Leff, 253 N.Y. 359, 364, 171 N.E. 569, 571 (1930).) In a case where the defendant asserts as a defense a claim of right to the goods, or lack of knowledge that they belonged to the other person, or lack of intent to keep the goods, we presume that a court would liberally grant a bill of particulars to clarify the word "stole."